UNITED STATES of America,
Appellee,

v.

Samuel O. SWOFFORD, Jr., Appellant.

No. 75–1467.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1975.

Decided Feb. 6, 1976.

Rehearing and Rehearing En Banc
Denied March 11, 1976.

Irl B. Baris, St. Louis, Mo., for appellant.

John R. Birkby, Dept. of Justice, St. Louis, Mo., for appellee.

Before HEANEY, BRIGHT and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Appellant Samuel O. Swofford, Jr. was convicted by a jury in the Eastern District of Missouri on one count of conspiracy to conduct an illegal gambling operation in violation of 18 U.S.C. § 371 and on one count of conducting such an operation in violation of 18 U.S.C. §§ 1955 and 2. He was sentenced to four years for each count, the sentences to be served concurrently.

The indictment charged that appellant and seven others conspired to violate and did violate 18 U.S.C. § 1955 by conducting in the State of Missouri, between January 1, 1972 and April 1, 1974, a poli-

cy operation. The seven others were indicted after a series of raids that took place on February 26, 1974; all entered pleas of guilty, and five testified for the government at trial. Appellant, who was indicted and arrested on April 23, 1975, presented no evidence. The principal issues raised on appeal concern admission of certain hearsay evidence and the denial of a motion to suppress.

Appellant contends that the court erred in permitting evidence of a conversation between co-conspirators outside the presence of the appellant and after the conspiracy had ended.

Co-conspirator Joseph O'Connell testified that after February 26, 1974 he visited with co-conspirator Donald Burr and Burr's wife, Sonja, and that the name "Sam" or "Fats,"[1] a nickname O'Connell stated that he had given appellant, was mentioned once or twice at most. He did not testify as to the substance of any statement he made to the Burrs with regard to "Sam" or "Fats."

Over objection, Burr and his wife were allowed to testify concerning a statement made to them by O'Connell after February 26, 1974, the date of the FBI raids which presumably put an end to the policy operation and to the conspiracy.[2]

Burr testified that O'Connell had said "to keep Fats out of this, that he had been arrested once before . . ." As to the same statement, Burr's wife testified that O'Connell had told her and her husband to take the blame and "not to mention Sam" when questioned about the policy operation.

The government contends that the testimony concerning O'Connell's statement, which is alleged to have been made on March 8, 1974, is admissible to show that O'Connell's testimony identifying "Fats" as appellant was not a recent fabrica-

---

1. "Fats" and "Fat" are used interchangeably in the record.

2. The government conceded at oral argument that the conspiracy had ended at the alleged time of the statement in question (March 8, 1974) and does not urge its admission on grounds that it was made in furtherance of the conspiracy. See Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); United States v. Smith, 520 F.2d 1245 (8th Cir. 1975).

tion, since O'Connell's credibility, particularly as to the identity of appellant, had become an issue after his cross examination. Accordingly, the government says that the statement was offered not for the truth of the matter asserted but simply to show that it was a prior statement consistent with his present testimony.

We acknowledge that this argument is not without force. However, according to the Burrs' testimony, the statement itself identified no one as appellant Sam Swofford, and we have difficulty in characterizing the statement as to prior consistency. Furthermore, there is no other evidence in the record to indicate that either of the Burrs first learned of the identity of "Fats" through this statement. To the contrary, there is evidence that at the time of the statement Burr already knew that "Fats" was appellant. Burr testified that when O'Connell said "keep Fats out of this," Burr knew that O'Connell was referring to Sam Swofford. Upon his cross examination, Burr was read his testimony to the grand jury, which indicated that when O'Connell introduced Burr to appellant on one occasion at a lounge, O'Connell said that appellant was "Fats."

But apart from the Burrs' testimony as to O'Connell's statement, there was ample evidence that "Fats" was involved in the conspiracy and in the policy operation, that appellant Sam Swofford was so involved, and that appellant is "Fats." Evidence that "Fats" was involved includes O'Connell's and Burr's identification of the policy operation's weekly reports, which showed what was due "Fats" or what he owed. Evidence that appellant Sam Swofford was involved includes the slips of paper seized from his person on the date of his arrest, which contained notations indicating his possible connection with the policy operation, as well as O'Connell's testimony that appellant had introduced him to the policy operation and received 50% of the profits. Further evidence of Swofford's involvement is O'Connell's testimony, which was corroborated by Burr, that O'Connell introduced Burr and appellant on one occasion at a lounge because O'Connell had recruited Burr to work for the operation.

There was also evidence that appellant is "Fats," such as O'Connell's stating that he had given appellant that nickname, and Burr's and O'Connell's testimony that "Fat" on the weekly reports referred to appellant. And there was the aforementioned testimony by Burr before the grand jury that when O'Connell introduced him to appellant, O'Connell said that appellant was "Fats."

■ In view of this evidence, admission of a hearsay statement to "keep Fats out of this" or "not to mention Sam" was merely cumulative and cannot be deemed to have had a substantial influence on the jury. See *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), and *United States v. Straughan,* 453 F.2d 422 (8th Cir. 1972). Thus, we conclude that if the admission of the testimony of Burr and his wife with regard to O'Connell's statement was error, it was harmless. Fed.R. Crim.P. 52(a).

With respect to O'Connell's statement to the Burrs on March 8, appellant complains also that the trial court should have granted appellant's motion for a mistrial following Donald Burr's testimony that O'Connell had said that Fats "had been arrested once before." After denying the motion, the court promptly instructed the jury "that the answer of this witness concerning the arrest record of Fats has been stricken from the record because it has no bearing on the guilt or innocence of the defendant in this case and it is not admissible in evidence. . . ."

This court, in *Dolan v. United States,* 218 F.2d 454 (8th Cir.), *cert. denied,* 349 U.S. 923, 75 S.Ct. 665, 99 L.Ed. 1255 (1955), held the following:

The general rule is that where evidence is erroneously admitted the subsequent striking of it from the case, accompanied by a clear and positive instruction to the jury to disregard the evidence, cures the error. But if the

evidence is of such an exceptionally prejudicial character that its withdrawal from the consideration of the jury cannot remove the harmful effect caused by its admission, a new trial will be granted. [Citations omitted.] 218 F.2d at 460. *See also Wiley v. United States,* 257 F.2d 900 (8th Cir. 1958).

We find that the brief reference to appellant's prior arrest is not so exceptionally prejudicial as to require reversal and that the court's instructions to the jury adequately explained that the evidence was to be disregarded and had been stricken from the record.

Another assignment of error is that the court should have granted appellant's motion to suppress evidence consisting of seven slips of paper which were found in appellant's wallet and pockets when he was searched at the FBI office after his arrest. The slips of paper contained notations which indicated that appellant might have been involved with the illegal policy operation.

Appellant was arrested at his home pursuant to an arrest warrant. The arresting officer testified that even though he gave appellant a "pat down" at home, he did not want to search appellant's person more thoroughly at that time because appellant's daughter was at home and the agent did not want to upset her or appellant.

Appellant does not contest the lawfulness of his arrest, but contends that the search at the FBI office was unlawful because it was warrantless, because it was conducted after he had been searched for a weapon, and because the officers had no reason to believe that he had evidence on his person.

Had the search in question been conducted at appellant's home immediately upon execution of his arrest, there is little question that the evidence would have been admissible. In addressing the question of lawfulness of a warrantless search of the person incident to a lawful arrest, the United States Supreme Court has held:

> . . . A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

In view of the fact that a thorough search of appellant's person was delayed by the presence of appellant's daughter at his home, and since there is no evidence that the search was delayed unduly beyond the time required to transport appellant from his home to the FBI office, we find that the reasonableness of the search was not affected by its being conducted at the office instead of at appellant's home.[3] We find the search incident to a lawful arrest and the fruits of the search admissible.

Appellant complains of the court's denial of counsel's request to examine the pre-sentence investigation report. The record reflects that the court revealed information from the report concerning appellant's prior criminal record. Even though appellant's counsel questioned the accuracy of the information in the report concerning appellant's fine and sentence for a prior conviction, appellant does not allege that the trial court misread or misinterpreted the report.

At the time of appellant's sentencing, Fed.R.Crim.P. 32(c)(2) provided that the

---

**3.** Assuming alternatively that the office search required justification other than merely being incident to lawful arrest, we conclude that it was nevertheless lawful. The arresting officer testified that one purpose of the search was to find evidence. The pieces of paper seized were easily destructible and thus rendered a warrantless search reasonable. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1968).

trial judge may use his discretion whether to disclose "all or part of the material contained in" a pre-sentence investigation report.[4]  As pointed out by Judge Heaney in *United States v. Calvert,* 523 F.2d 895, 913 (8th Cir. 1975), members of this court have differed on the question of abuse of discretion where the trial court has failed to divulge the substance of the report, including adverse information which, if revealed, might be refuted by the defense.  *See United States v. Dace,* 502 F.2d 897 (8th Cir. 1974), *cert. denied,* 419 U.S. 1121, 95 S.Ct. 803, 42 L.Ed.2d 820 (1975), and *United States v. Schrenzel,* 462 F.2d 765 (8th Cir.), *cert. denied,* 409 U.S. 984, 93 S.Ct. 325, 34 L.Ed.2d 248 (1972).

■ Here the court accurately disclosed adverse information in the pre-sentence report.  In these circumstances we find that there was no abuse of discretion and that the sentence is valid. *See United States v. Calvert, supra,* and *United States v. Carden,* 428 F.2d 1116 (8th Cir. 1970).

■ Finally, we note appellant's complaint that his concurrent sentences of four years on each count are excessive. The ultimate sentence is well within statutory limits.  The complaint is without merit.

Affirmed.

---

**4.**  That rule has been amended, effective December 1, 1975, and the new rules require the court to grant a request that the defendant or his counsel be allowed to read the report. Fed.R.Crim.P. 32(c)(3)(A).