UNITED STATES of America, Appellee,

v.

Ronald M. SCHLEIS, Appellant.

No. 76–1256.

United States Court of Appeals, Eighth Circuit.

Submitted June 18, 1976.

Decided Oct. 21, 1976.

Jack S. Nordby, St. Paul, Minn., for appellant.

Joseph T. Walbran, Asst. U.S. Atty., Minneapolis, Minn., for appellee; Robert G. Renner, U.S. Atty., Minneapolis, Minn., on brief.

Before GIBSON, Chief Judge, and LAY and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

As a result of a search of his person and briefcase by a United States Deputy Marshal not on official duty, evidence was discovered which led to the arrest and conviction of appellant Ronald M. Schleis for possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The single issue presented on this appeal is whether the District Court[1] erred in overruling Schleis's motion to suppress the seized evidence. We hold it did not and affirm the judgment of conviction.

On November 17, 1974, Leon Cheney was leaving Jack's Restaurant in Burnsville, Minnesota, where he had eaten dinner with his family. He observed appellant walking toward the restaurant. Appellant was weaving and stumbled at the restaurant foyer. Cheney watched as appellant attempted to make a telephone call; he saw appellant make several unsuccessful attempts to dial and fumble coins as he attempted to place them in the slot. Cheney, a federal deputy marshal, reentered the foyer and approached appellant, who at that point was leaning against the telephone and clutching his briefcase, his head bobbing and weaving. At close vantage, Cheney observed that appellant's eyes were dilated and staring, but he detected no odor of alcohol on appellant's breath. Appellant's responses to Cheney's questions were inaudible; Cheney concluded that he was under the influence of something other than liquor.

Cheney's reaction to this situation was to request appellant to come outside with him. Before they left the foyer, Cheney attempted to identify himself to appellant as a deputy marshal and read appellant his *Miranda* rights from a card. Cheney asked his wife to call the local police department.[2]

Cheney next placed appellant's hands on the hood of an automobile and patted him down for weapons. In the course of the pat-down, Cheney removed a large bulky wallet from appellant's hip pocket and threw it on the hood of the automobile, where it opened, revealing a small plastic bag of marijuana and a large amount of currency.

When the police officer arrived at the scene, Cheney showed him what he had

1. The Honorable Miles W. Lord, United States District Court for the District of Minnesota. The case was tried to the Court.

2. Cheney testified that he thought appellant should receive treatment under the public welfare law as he was unable to care for himself.

discovered. The officer recalled that, approximately a year earlier, another police officer had pointed out appellant to him as a drug dealer. He placed appellant under arrest.

A crowd was gathering and the local police elected to take appellant to the station before completing the search. At the station a search of appellant's clothing revealed a plastic medicine bottle containing a white crystalline substance that appeared to Cheney to be cocaine. (This was confirmed in a subsequent test.) A police officer then forced open the briefcase and found inside over two pounds of cocaine in plastic bags.

Appellant contends that Cheney's search of his person was improper because nothing had occurred to justify an arrest and because Cheney was without authority to conduct a search on any other basis. From this he reasons that the discovery of the cocaine in the briefcase was tainted by a prior unreasonable search. Alternatively he contends that the warrantless stationhouse search violated his Fourth Amendment rights.

It is arguable that Cheney's actions prior to appellant's arrest should be evaluated as acts by a private citizen and hence, outside the reach of the exclusionary rule's protection of Fourth Amendment rights. *See United States v. Kelly,* 529 F.2d 1365, 1371 (8th Cir.1976). *See also United States v. Unverzagt,* 424 F.2d 396, 398 (8th Cir.1970). We think it preferable, however, and more in consonance with the unusual facts of this case, to test Cheney's actions as those of a federal officer since he identified himself to appellant as such, read appellant his *Miranda* warnings, and may have coerced submission to the search by reason thereof.

### Investigatory Stop

■ The facts previously outlined formed a basis from which Cheney could reasonably infer that appellant was under the strong influence of some drug other than alcohol. He could also conclude, on the basis of his observations, that it was necessary for his own protection to deter-

mine whether appellant was carrying any dangerous weapons. The facts known to Cheney satisfy the requirements of *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The manner of search for weapons was not unduly intrusive; only the bulky object in appellant's pocket was removed. Cheney was aware from recent training bulletins that objects the size of the wallet had been used to conceal firearms. Probable cause to arrest appellant arose when the bag of marijuana appeared in plain view when the wallet landed open upon the hood of the car. The arrival of the police officer with information on appellant's drug related background provided additional probable cause for the arrest.

### Search of Appellant's Person

■ Had the search of appellant's person taken place at the scene, it would have been fully authorized as a lawful search incident to arrest. *See Gustafson v. Florida,* 414 U.S. 260, 266, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); *United States v. Robinson,* 414 U.S. 218, 234–35, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). The stationhouse search took place a short time after the arrest. In *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), the Supreme Court approved a stationhouse evidentiary search of articles of clothing which the defendant was wearing at the time of his arrest. The Court held that for a reasonable time (over ten hours in *Edwards*) and to a reasonable extent the effects in the possession of the accused at the time of arrest which were subject to search and seizure at such time and place could lawfully be searched and seized without a warrant at the stationhouse. *See United States v. Hollman,* 541 F.2d 196, 199 (8th Cir. 1976). *See also United States v. Caruso,* 358 F.2d 184, 185–86 (2d Cir.), *cert. denied,* 385 U.S. 862, 87 S.Ct. 116, 17 L.Ed.2d 88 (1966).

### Search of the Briefcase

We first examine the search of the briefcase in terms of whether such a search would have been proper at the time and place of arrest. In *United States v. Eatherton,* 519 F.2d 603 (1st Cir.), *cert. denied,* 423

U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975), the defendant was arrested while carrying a briefcase containing physical evidence of his participation in a bank robbery. While conceding that the arrest was made upon probable cause and that the seizure was proper under the circumstances, he contended that the briefcase should not have been searched prior to the obtaining of a warrant. The First Circuit rejected this contention on appeal, holding that at the point of its seizure incident to a lawful arrest "any expectation of privacy which he held with regard to the briefcase was taken out of 'the realm of protection from police interest in weapons, means of escape, and evidence.'" 519 F.2d at 611, *quoting from United States v. DeLeo,* 422 F.2d 487, 493 (1st Cir.), *cert. denied,* 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970) (emphasis added). *See also Draper v. United States,* 358 U.S. 307, 311, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *United States v. Battle,* 166 U.S.App.D.C. 396, 510 F.2d 776, 778–79 (1975); *United States v. Mehciz,* 437 F.2d 145, 146–48 (9th Cir.), *cert. denied,* 402 U.S. 974, 91 S.Ct. 1663, 29 L.Ed.2d 139 (1971) (search of overnight suitcase upheld even though defendant was in handcuffs at the time). This line of cases was implicitly approved in *United States v. Edwards, supra,* 415 U.S. at 808–09, 94 S.Ct. 1234. Applying the somewhat more restrictive requirements of our holding in *United States v. Buckhanon,* 505 F.2d 1079, 1082 (8th Cir. 1974), the observed bag of marijuana and the information possessed by the police officer with respect to appellant's drug dealing history clearly supplied "probable cause to believe that [the briefcase] contain[ed] contraband."

 Turning next to the reasonable time and reasonable extent tests approved in *Edwards,* the Second Circuit in a pre-*Edwards* case concluded that a delayed search of a briefcase was a reasonable accommodation to avoid public embarrassment to the accused. *United States ex rel. Muhammad v.*

*Mancusi,* 432 F.2d 1046, 1047–48 (2d Cir. 1970), *cert. denied,* 402 U.S. 911, 91 S.Ct. 1391, 28 L.Ed.2d 653 (1971). The police in the instant case were faced with a gathering crowd. In a post-*Edwards* case, our Circuit held that a delayed search of the accused's person was appropriate since the accused's daughter was present at the arrest. *United States v. Swofford,* 529 F.2d 119, 122 (8th Cir.1976). We think the tests were likewise met in this case.

While the dissenting opinion in *Edwards* suggested that the justification for the delayed warrantless search disappeared once the accused was in custody, *see* 415 U.S. at 810, 94 S.Ct. 1234 (Stewart, J., dissenting), we agree with the First Circuit that this view does not presently represent the law. *United States v. Eatherton, supra,* 519 F.2d at 610. *See also United States v. Jeffers,* 524 F.2d 253, 256 (7th Cir.1975); *United States v. Battle, supra,* 510 F.2d at 779. We hold that the delayed search of the briefcase was made at a reasonable time and to a reasonable extent and did not invade appellant's Fourth Amendment Rights.[3]

Affirmed.

---

**3.** In view of our holding, it is unnecessary to rule upon the government's alternative claim that the search was a proper inventory search.

It may be said, however, that the record does little to support this claim.