**UNITED STATES of America, Appellee,**

**v.**

**Clifton LIGGONS, Appellant.**

**No. 76–1246.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 17, 1976.

Decided Dec. 1, 1976.

Rehearing and Rehearing En Banc Denied Dec. 28, 1976.

Thomas C. Kayser, Minneapolis, Minn., for appellant; Marshall H. Tanick, Minneapolis, Minn., on the briefs.

Joseph T. Walbran, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Robert G. Renner, U. S. Atty., Minneapolis, Minn., on the briefs.

Before BRIGHT and WEBSTER, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

WEBSTER, Circuit Judge.

Clifton Liggons, a previously convicted felon, was found guilty of violating 18 U.S.C. App. § 1202(a)(1) by receiving a firearm in interstate commerce. In this appeal, Liggons challenges the "frisk" of his person which produced the incriminating weapon. He contends also that the government did not prove a nexus with interstate commerce sufficient to support the conviction.

This prosecution arises from the investigation by Minneapolis police of a suspected illegal after-hours drinking establishment, or "tippling house." A warrant had been issued for the search of the suspected premises.[1] The warrant was executed in the early morning hours of December 8, 1974, by several Minneapolis police officers. Among the officers was Patrolman Robert Berneck. Patrolman Berneck testified that he had participated in some thirty or forty such raids; in almost all of these raids firearms had been discovered.

As Berneck approached the suspected house, he observed, through a large window in the door, six to eight people, most of them with drinks in their hands. The officers knocked and entered. Berneck observed appellant standing near the door, holding a drink in his hand.[2] Appellant was wearing a light brown uniform, similar to those worn by officers of the Hennepin County Sheriff's Office. (He was in fact a privately employed building security officer.) The uniform suggested to Berneck that appellant might be in possession of a firearm.

Berneck directed the occupants of the room to put their drinks down and put their hands against the wall. As appellant turned toward the wall, his jacket lifted and Berneck observed a belt with an attached holster. Berneck reached over and removed a loaded revolver from the holster.

The District Court,[3] after a pretrial suppression hearing, denied appellant's motion to suppress the revolver.

At trial, the government proved that appellant had been convicted of a felony, and that he had received and possessed the firearm. It proved also that the weapon had been manufactured in Springfield, Massachusetts, between 1942 and 1944, and shipped to Great Britain shortly thereafter. There was no further proof of the weapon's history.

Appellant was found guilty of receipt of the weapon,[4] and was sentenced to two years' imprisonment.

### I.

Appellant first contends that the revolver should have been suppressed as the product of an unreasonable search and seizure. The government seeks to defend the discovery of the firearm either as the product of a search incident to arrest, or as the result of a preventive "frisk" justified under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We hold that Officer Berneck's actions were justified under *Terry,* and so do not address the question whether the seizure could be justified under the theory of a search incident to arrest.

*Terry* established that a police officer may in some situations conduct a reasonable weapons search of an individual even in the absence of probable cause for the individual's arrest. *Id.,* 392 U.S. at 27, 88 S.Ct. 1868. "The officer need not be absolutely certain that the individual is armed; the

---

* The Honorable Talbot Smith, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

1. The sufficiency of this warrant is unquestioned.

2. It was never determined whether this drink was alcoholic.

3. The Honorable Donald P. Alsop, United States District Court for the District of Minnesota.

4. The District Court, concluding that the interstate nexus was insufficient to support a possession charge, submitted the case solely on a receipt theory.

issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* (citations omitted). *See United States v. Stevens,* 509 F.2d 683, 687 (8th Cir.), *cert. denied,* 421 U.S. 989, 95 S.Ct. 1993, 44 L.Ed.2d 479 (1975); *United States v. Peep,* 490 F.2d 903, 905 (8th Cir. 1974); *Glick v. Erickson,* 488 F.2d 182 (8th Cir. 1973); *United States v. Unverzagt,* 424 F.2d 396 (8th Cir. 1970). *See also United States v. Schleis,* 543 F.2d 59 (8th Cir. 1976).

■ Here, the Minneapolis officers were investigating an offense which Officer Berneck knew from experience was often connected with firearms. As the officers approached the building, they saw a number of suspects inside. Berneck observed appellant wearing a uniform, which suggested to him the possibility that appellant was carrying a firearm. In these circumstances, it was clearly reasonable for Berneck, for his own protection and that of his fellow officers, to conduct a limited frisk to determine if appellant was carrying a weapon.[5] It was as appellant turned to submit to this frisk that Berneck observed the revolver.

The weapon was properly found and seized; the trial court did not err in refusing to suppress it.

## II.

■ Appellant contends that the government failed to prove a nexus between the revolver and interstate commerce sufficient to support a receipt conviction under 18 U.S.C. App. § 1202(a)(1). He concedes that the government did prove that the revolver was manufactured in Massachusetts, was shipped to Great Britain, and subsequently appeared in Minnesota. This is plainly sufficient under our decisions interpreting § 1202(a)(1), which merely require proof "that the firearm has travelled in or affected commerce at some time before its receipt . . . ." *United States v. Hopkins,* 529 F.2d 775, 777 (8th Cir. 1976); *see United States v. Hayes,* 535 F.2d 479, 482 (8th Cir. 1976); *United States v. Steeves,* 525 F.2d 33, 38–39 (8th Cir. 1975); *United States v. Kelly,* 519 F.2d 251, 254 (8th Cir. 1975); *United States v. Goings,* 517 F.2d 891, 892 (8th Cir. 1975); *United States v. Mancino,* 474 F.2d 1240, 1242 (8th Cir.), *cert. denied,* 412 U.S. 953, 93 S.Ct. 3020, 37 L.Ed.2d 1007 (1973).

Appellant contends that, in light of *Barrett v. United States,* 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976), our construction of § 1202(a)(1) is erroneous. He asserts that § 1202(a)(1) should now be applied only to direct interstate receipts of firearms.

■ Our construction of § 1202(a)(1), adopted in *United States v. Mancino, supra,* is based on language in *United States v. Bass,* 404 U.S. 336, 350, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). In *Bass,* the Supreme Court held that a nexus with commerce must be proven in prosecutions for possession and receipt under § 1202(a)(1). It suggested that this nexus could be proven in a receipt case by showing that "the firearm received has previously traveled in interstate commerce." 404 U.S. at 350, 92 S.Ct. at 524 (footnote omitted).

In dictum the Court drew a distinction between 18 U.S.C. App. § 1202(a)(1) and the offenses proscribed in 18 U.S.C. § 922(g) and (h),[6] observing that § 922(g) and (h) "is limited to the sending or receiving of fire-

---

**5.** Appellant emphasizes that, in preliminary hearing testimony which he later contradicted, Officer Berneck stated that he had announced before directing appellant to turn toward the wall that appellant was under arrest. The conflict in Berneck's testimony on this point is irrelevant to our disposition of the case. Assuming arguendo both that Berneck did announce an arrest and that he had no probable cause to do so, this would not invalidate the seizure of the firearm. Objectively, Berneck had justification for a limited *Terry* protective search; any error in announcing the reason for the search would not affect its validity. *See Klingler v. United States,* 409 F.2d 299, 306 (8th Cir.), *cert. denied,* 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed.2d 110 (1969); *United States v. McCoy,* 517 F.2d 41, 43 n.1 (7th Cir.), *cert. denied,* 423 U.S. 895, 96 S.Ct. 195, 46 L.Ed.2d 127 (1975).

**6.** Section 1202(a)(1) punishes any member of certain classes of persons who "receives, possesses, or transports in commerce or affecting commerce . . . any firearm . . . ."

arms as part of an interstate transportation" (footnote omitted), 404 U.S. at 342–43, 92 S.Ct. at 520, while § 1202(a)(1) applies in any case in which the firearm has moved in commerce. In *Barrett v. United States, supra,* the Supreme Court was squarely faced with the necessity of interpreting § 922(h). It receded from the narrow scope of § 922(h) which it had suggested in *Bass,* and concluded instead "that § 922(h) covers the intrastate receipt . . . of a firearm that previously had moved in interstate commerce." *Id.,* 423 U.S. at 225, 96 S.Ct. at 505.

Appellant contends that the effect of *Barrett* is to create a redundancy between § 922 and § 1202(a)(1), in that the receipt offenses under the two statutes are now substantially identical. He asserts that, to eliminate this redundancy, we should adopt a more narrow reading of § 1202(a)(1), confining its operation to cases in which the movement in commerce and receipt of the firearm are closely related in time.

Adoption of the interpretation of § 1202(a)(1) urged by appellant would require us to overrule the many prior decisions of this Court (some decided after *Barrett*) following the *Bass* interpretation of § 1202(a)(1), an action that could be taken only by the Court en banc. We decline to proceed in that direction because we find the argument to be without merit.

Appellant's argument is grounded on the assumption that § 922(h) and § 1202(a)(1), both of which were enacted by the same Congress, must be interpreted so as to punish differing conduct. There is no basis to this assumption. As the Supreme Court said in *Bass* :

> Section 922(h) makes it unlawful for certain persons "to receive any firearm or ammunition which have been shipped or transported in interstate commerce."

7. In fact, both these statutes were intended to reach the same evil: the receipt and possession of firearms by "specified classes of especially risky people . . . ." *United States v. Bass, supra,* 404 U.S. at 345, 92 S.Ct. at 521; *see Barrett v. United States, supra,* 423 U.S. at 220,

In any event, circumstances surrounding the passage of Title VII [of the Omnibus Crime Control and Safe Streets Act of 1968, containing § 1202(a)] make plain that Title VII was not carefully molded to complement Title IV [of the Crime Control Act of 1968, containing § 922(h)]. Title VII was a last-minute Senate amendment to the Omnibus Crime Control and Safe Streets Act. The Amendment was hastily passed, with little discussion, no hearings, and no report. The notion that it was enacted to dovetail neatly with Title IV rests perhaps on a conception of the model legislative process; but we cannot pretend that all statutes are model statutes. . . . In our view, no conclusion can be drawn from Title IV concerning the correct interpretation of Title VII. (footnote omitted).

404 U.S. at 344–45, 92 S.Ct. at 520.[7]

The government proved a receipt that had a nexus with commerce sufficient under our decisions. The other elements of the offense were conceded to have been established.

Affirmed.

96 S.Ct. 498. In *Barrett,* the Court decided that an immediate nexus with commerce need not be shown under § 922(h). In *Bass,* it was a serious question before the Court whether Congress, in its desire to reach the evils attacked by § 1202(a)(1), had eliminated entirely any commerce requirement. The argument that either statute was intended to reach only direct interstate receipts can thus no longer be made.