Pete Carlos **MOLINA**

v.

**STATE of Texas.**

No. 4–87–00169–CR.

Court of Appeals of Texas,
San Antonio.

July 13, 1988.

Don Killingsworth, Lindale, for Molina.

Fred G. Rodriguez, Jay Brandon, Criminal Dist. Attys., San Antonio, for State.

Before BUTTS, CANTU and REEVES, JJ.

## OPINION

CANTU, Justice.

Appellant was convicted by a jury of resisting arrest, a misdemeanor. TEX.PENAL CODE ANN. § 38.03 (Vernon 1974). Punishment was assessed by the trial court at confinement for thirty days. The trial court's overruling of appellant's motion to suppress and the sufficiency of the evidence to support the conviction are challenged. Accordingly, we review the entire record and view it in the light most favorable to the verdict. We uphold that verdict only if we find that any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

On January 31, 1987, a Saturday, San Antonio police officer Joe Correa was assigned to downtown foot patrol. That afternoon he observed a group of four people sitting beside the sidewalk next to a city bus stop in the 100 block of N. Alamo Street. He observed this group, which included appellant, for a period of time exceeding 15 minutes. The position the group took appeared to be obstructing the heavy flow of pedestrial traffic associated with tourism in that part of the downtown area. Officer Correa noted that numerous buses had arrived and departed the area and that the group was apparently not interested in bus transportation. Moreover, Officer Correa recognized some of the members of the group to be gang-related.

Officer Correa approached the group and asked each member to identify himself. Appellant provided several names, eventually supplying his true name by providing a social security card. Pursuant to departmental and customary practice, Officer Correa radioed in on an information channel for information on appellant's name to determine if any outstanding warrants or citations existed. When Officer Correa received confirming information of an outstanding parole violator warrant, appellant, who was listening to the transmission, began to move away as if to flee. Officer Correa then advised appellant that he was under arrest and grabbed at appellant's shirt as appellant moved away from the officer. As Officer Correa grabbed appellant, appellant grabbed the officer's wrist stating, "No man. I ain't going back." Appellant's shirt began to tear. At this point appellant, while holding on to the officer's wrist, threw the officer's hand away causing the officer to lose his hold on appellant's shirt. Appellant then began to run. Officer Correa managed to grab appellant's right hand and pulled him back toward him. Appellant responded by flaying his arms up and down in an effort to extricate himself. As Officer Correa struggled with appellant, several military men stepped in to assist the officer in subduing appellant. Appellant tried to strike the intervenors. Finally, an employee of a nearby restaurant, who had been watching the struggle, appeared to assist the officer in handcuffing appellant.

Appellant alleges in two separate points of error that the evidence is insufficient to support the conviction because (1) the evidence is lacking to show that he used force directed at the officer and (2) because the evidence does not show that he resisted at the time of the arrest.

TEX.PENAL CODE ANN. § 38.03 provides in pertinent part:

(a) A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest or search of the actor or another by using force against the peace officer or another.

State law provides via TEX.CODE CRIM. PROC.ANN. art. 15.22 (Vernon 1977):

A person is arrested when he has been actually placed under restraint or taken into custody by an officer or persons

executing a warrant of arrest, or by an officer or person arresting without a warrant.

We examine the challenged detention in terms of the fourth amendment to the United States Constitution and its State counterpart, art. I, § 9 of the Texas Constitution.

The fourth amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S.CONST. Amend. IV.

Article I, § 9 provides:

The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

TEX.CONST. art. I, § 9.

The construction to be placed upon both prohibitions against unreasonable searches and seizures shall be the same since they are identical in all material aspects. *Kann v. State*, 694 S.W.2d 156, 159 (Tex.App.—Dallas 1985, pet. ref'd); *Duncan v. State*, 680 S.W.2d 555, 558 (Tex.App.—Tyler 1984, no pet.). We look, therefore, to those opinions of the United States Supreme Court in interpreting the fourth amendment.

"No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authori-

ty of law." *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734, 737 (1891).

"This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." *Terry v. Ohio*, 392 U.S. 1, 8–9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889, 898 (1968). But the constitution forbids only unreasonable searches and seizures, not all searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669, 1680 (1960).

In *Terry v. Ohio, supra*, the United States Supreme Court recognized three distinct contacts; the "neutral" on-the-street police-citizen contact, an investigative stop, and the traditional arrest. A neutral contact is characterized by less state interference than are stops and arrests. It is one where a citizen may decline to communicate and is free to leave the officer's presence and is, therefore, outside the ambit of fourth amendment consideration. *Terry v. Ohio, supra* 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16, 20 L.Ed.2d at 905 n. 16; *see also New Jersey v. Sheffield*, 62 N.J. 441, 303 A.2d 68, *cert. denied* 414 U.S. 876, 94 S.Ct. 83, 38 L.Ed.2d 121 (1973) where the contact is termed "field interrogation."

Every encounter between an individual and a party who identifies himself as a police officer does not transform the occasion into a seizure requiring constitutional justification. *Florida v. Royer*, 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983). But many alleged neutral contacts do escalate into *Terry* stops on the basis of the detained person's subsequent conduct. Inconsistent answers,[1] excessive nervousness,[2] a drugged demeanor,[3] and furtive gestures[4] have all been declared sufficiently suspicious to jus-

---

1. *See Arizona v. Rhodes,* 19 Ariz.App. 505, 508 P.2d 764 (1973).

2. *People v. DeBour,* 40 N.Y.2d 210, 386 N.Y.S.2d 375, 352 N.E.2d 562 (1976).

3. *United States v. Schleis,* 543 F.2d 59, 61 (8th Cir.1976), *vacated on other grounds,* 433 U.S.

905, 97 S.Ct. 2968, 53 L.Ed.2d 1089 (1977); *See* 582 F.2d 1166, 1168 (8th Cir.1978) (rehearing en banc).

4. *Knight v. Oklahoma,* 502 P.2d 347 (Okla.Crim. 1972), *cert. denied* 411 U.S. 920, 93 S.Ct. 1561, 36 L.Ed.2d 313 (1973).

tify transforming a neutral contact into a forcible investigative detention.

■ There have been recognized a wide variety of reasons for police to speak to individual citizens. These reasons include crowd control, vice and vagrancy offenses, traffic control and juvenile problems. 3 W. LA FAVE, SEARCH AND SEIZURE, § 9.1, p. 17 (1978). If, however, during a neutral contact a police officer even briefly detains an individual and restrains that person's right to walk away, he has seized that individual. *Terry v. Ohio, supra,* 392 U.S. at 16, 88 S.Ct. at 1877, 20 L.Ed.2d at 903. A detention, no matter how momentary, is a seizure under the fourth amendment. *Florida v. Royer, supra* 460 U.S. at 498, 501, 103 S.Ct. at 1324, 1326, 75 L.Ed.2d at 236, 239; *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

The test for determining whether a police encounter amounts to a detention is an objective one of deciding whether a reasonable person under all the circumstances would believe he was not free to walk away. *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed. 2d 497, 509 (1980). "The line between minimally intrusive seizures which must be supported by reasonable suspicion and police-citizen interchanges which are outside the scope of the fourth amendment has often been a difficult one to draw." *United States v. Webster,* 750 F.2d 307, 320 (5th Cir.1984), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985). Whether a stop has occurred is a question that must be answered on the basis of the particular facts of each case. Any show of authority that may compel compliance with the officers' request, may suggest to a reasonable person that he is not free to walk away.

At least one court has held that the use of a defendant's identification to check for arrest warrant's constituted a show of au-

thority that would lead a reasonable citizen in a defendant's circumstances to believe that he was not free to leave unless the warrant check came back clear. *See Oregon v. Smith,* 73 Or.App. 287, 698 P.2d 973 (1985).

On the other hand, a stop, often referred to as an investigative detention, constitutes such an intrusion as involves fourth amendment considerations. It is a temporary restraint of a citizen's liberty justified by reasonable suspicion of criminal activity.[5] Such a restraint is often accomplished by police use of physical force or show of authority that impedes a citizen's liberty.

"[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer,* 460 U.S. at 500, 103 S.Ct. at 1325, 75 L.Ed.2d at 238. "[I]f an investigative stop continues indefinitely, at some point it can no longer be justified as an investigative stop." *United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605, 615 (1985). Yet, there is no *per se* rule based upon time limitations which transforms a stop into a *de facto* arrest. The test is whether the investigation was conducted in a diligent and reasonable manner. *United States v. Sharpe, supra.*

Because of the limited nature of seizures less intrusive than a traditional arrest, stops of this sort may be justified on facts that do not amount to the probable cause required for an arrest. Instead, the conduct involved must be tested by the fourth amendment's general proscription against unreasonable searches and seizures. *Terry v. Ohio, supra* 392 U.S. at 20–21, 88 S.Ct. at 1879, 20 L.Ed.2d at 905–06.

The test requires consideration of at least three questions: (1) Whether the intrusion was an arrest or a stop; (2) Whether the stop was of a type which is reason-

**5.** In the interest of effective crime prevention and detection it is recognized that a police officer may in appropriate circumstances and in appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. *Terry v. Ohio* 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906–907.

The distinction between an arrest and a stop is crucial in many cases for an arrest can be made only on probable cause, while a stop is proper under the more relaxed "reasonable suspicion" standards of *Terry.*

able in view of the public interest served and the degree of invasion entailed; and (3) Whether the particular stop was warranted by a reasonable suspicion based on specific articulable facts and rational inferences from those facts. *See United States v. Brignoni–Ponce,* 422 U.S. 873, 880–81, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607, 616 (1975); *United States v. Mendenhall, supra.*

Among the circumstances courts have considered important to classifying the intrusion as either an arrest or a stop are: the officer's intent in stopping the citizen; the impression conveyed to the citizen as to whether he was in custody or only briefly detained for questioning; the length of the stop; the questions, if any, asked; the extent of the search, if any; and the amount of force, if any, used to make the stop. *See, e.g., United States v. White,* 648 F.2d 29, 34 (D.C.Cir.), *cert. denied,* 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 235 (1981).

Since an investigative stop is a seizure, its validity must be tested for reasonableness. There is, however, no ready test for determining reasonableness other than by balancing the need to search or seize against the invasion which the search or seizure entails. This is done by looking to see if the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry v. Ohio, supra,* 392 U.S. at 20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905.

For example, it has been held that a brief stop of a suspicious individual, in order to determine his identity or to ask him to explain suspicious circumstances or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972); *Wood v. State,* 515 S.W.2d 300, 306 (Tex.Crim.App. 1974). And the behavior of the suspect need not suggest the commission of a particular offense; any sufficiently suspicious criminal activity may justify a stop. *Cf. Peters v. New York, sub nom. Sibron v.* *New York,* 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917, 936–37 (1968).

■ Appellant characterizes his initial detention as an arrest, that is, one requiring probable cause. We disagree. In our opinion officer Correa initially approached appellant for the sole purpose of making a neutral contact; that is, to investigate the group's (including appellant's) failure to move from their position on a crowded sidewalk as they obstructed the free flow of tourist traffic. *Cf. United States v. White, supra* [stop to further officer's investigation; to question not to arrest].

■ Officer Correa then recognized some of the members of the group, as being gang-related. When appellant identified himself in an evasive manner by giving the officer several names, Officer Correa elected to pursue his contact further by focusing on appellant and seeking to investigate for possible warrants. At this time, Officer Correa's show of authority compelled appellant's compliance to remain and became a forcible investigative detention. Appellant was effectively restrained of his liberty and was the subject of seizure under the fourth amendment. *Cf. Oregon v. Smith, supra.* This escalation of a neutral encounter into an investigative stop can be justified only if Officer Correa now possessed reasonable suspicion of criminal activity. Clearly Officer Correa did not at this time possess probable cause to arrest, as appellant had committed no offense in his presence. Nevertheless, the knowledge that Officer Correa possessed at this point sufficed to provide such reasonable suspicion as is contemplated under the case law heretofore reviewed.

Officer Correa reasonably believed that the group of which appellant was a member was not intent upon boarding a bus, as clearly numerous opportunities for that objective had been passed up. Moreover Officer Correa was justified in concluding that the group's loitering was in some manner related to the large tourist traffic and the high incidence of crime related to tourism at that particular location. His recognition of some of the members of the group as being gang related reinforced his beliefs,

reasonably we think, that appellant's presence was in some manner criminally related.

■ We recognize that where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful. *See Shaffer v. State,* 562 S.W.2d 853, 855 (Tex.Crim.App. 1978). We believe the events unfolding before Officer Correa no longer tilted towards pure innocent activity. The facts in the instant case are reminiscent of *Terry v. Ohio, supra.* The court therein stated:

> There is nothing unusual in two men standing together on a street corner, perhaps waiting for someone. Nor is there anything suspicious about people in such circumstances strolling up and down the street, singly or in pairs ...
>
> But the story is quite different where, as here, two men hover about a street corner for an extended period of time, at the end of which it becomes apparent that they are not waiting for anyone or anything....

392 U.S. at 22–23, 88 S.Ct. at 1881, 20 L.Ed.2d at 907.

We hold that the intrusion was an investigative detention or stop, that it was reasonable in view of the public interest served and the degree of invasion it entailed and that such intrusion as it then escalated was warranted by reasonable suspicion supported by specific articulable facts and such rational inferences to be drawn from those facts.

■ Having concluded that the intrusion was an investigative stop, we now turn to the events giving rise to the resisting arrest. It is clear that up to the point where Officer Correa displayed a show of authority transforming appellant's presence into a seizure, there existed no probable cause to arrest. However, upon the receipt of information advising Officer Correa that a parole violator's warrant was outstanding, the requisite probable cause surfaced for justifying appellant's further detention and custodial restraint. It is the resistance to this effort to take appellant into custody that gives rise to the instant prosecution.

■ There is ample evidence that appellant grabbed at Officer Correa's wrist and forcibly threw the Officer's hand away while at the same time attempting to flee the area. There is much testimony regarding his efforts to prevent his physical restraint which we think demonstrates violence directed at the arresting officer and certainly more than a desire to escape. But even a desire to escape can materialize only after an arrest has been effectuated.

■ TEX.PENAL CODE § 38.03 contemplates resisting an effort to implement traditional arrest and not, as appellant argues, resisting an investigative detention or stop. Clearly the language of § 38.03 together with the statutory definition of arrest, *see* TEX.CODE CRIM.PROC. art. 15.22 (Vernon 1977) address such an arrest as requires the presence of probable cause or warrant.

We reject appellant's contention that there is no evidence that he resisted an arrest or that he used force directed at Officer Correa. Appellant's points of error one, four and five are overruled.

Appellant's points of error two and three complain of the trial court's refusal to grant a challenge for cause of a venire person and for failing to grant an additional peremptory challenge.

During voir dire examination, the venireperson Carmen Macias Crane asked appellant's counsel if the jury would ever be told why appellant was resisting arrest. After a number of follow-up questions, Ms. Crane explained that the question was more inquisitive than an expression of how she felt about the case. Furthermore she expressed belief in the presumption of innocence and understood that the only reason appellant was in court was because he had been charged with an offense and not because he was necessarily guilty of the crime charged. Crane was satisfied that guilt or innocence was to be determined only after hearing all of the facts in the case. Appellant's counsel sought to challenge her for cause and the challenge was

denied by the trial court.[6]

TEX.CODE CRIM.PROC. art. 35.16 (Vernon 1988 pamphlet) provides:

(a) A challenge for cause is an objection made to a particular juror, alleging some fact which renders him incapable or unfit to serve on the jury. A challenge for cause may be made by either the state or the defense for any one of the following reasons:

\* \* \* \* \* \*

9. That he has a bias or prejudice in favor or against the defendant;

10. That from hearsay, or otherwise, there is established in the mind of the juror such a conclusion as to the guilt or innocence of the defendant as would influence him in his action in finding a verdict. To ascertain whether this cause of challenge exists, the juror shall first be asked whether, in his opinion, the conclusion so established will influence his verdict. If he answers in the affirmative he shall be discharged without further interrogation by either party or the court. If he answers in the negative, he shall be further examined as to how his conclusion was formed and the extent to which it will affect his action; and, if it appears to have been formed from reading newspaper accounts, communications, statements or reports or mere rumor or hearsay, and if the juror states that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and the evidence, the court, if satisfied that he is impartial and will render such verdict, may, in its discretion, admit him as competent to serve in such case. If the court, in its discretion, is not satisfied that he is impartial, the juror shall be discharged; ...

■ Bias exists as a matter of law when a prospective juror admits that he is biased for or against a defendant. *Anderson v. State*, 633 S.W.2d 851, 854 (Tex.Crim.App. 1982). When bias or prejudice on the part of a prospective juror are not established as a matter of law, the trial court has discretion to determine whether bias or prejudice actually exists to such a degree that the prospective juror is disqualified and should be excused from jury service. *Anderson v. State, supra.* The ruling of a trial judge on a challenge to a prospective juror may be overturned only if, in light of all the answers given by the juror, bias has been established as a matter of law.

It is within the trial court's discretion to first determine whether or not bias exists. Where the juror states he believes that he can set aside any influences he may have, and the trial court overrules a challenge for cause, its decision will be reviewed in light of all of the answers the prospective juror gives. *Anderson, supra.*

■ Examining all the answers given by Crane leads us to the clear conclusion that bias and prejudice were not shown to be present, much less established as a matter of law. The statements of Crane sufficiently support the trial court's implicit finding that Crane was not disqualified for bias or prejudice. Therefore, denying the challenge for cause was not error.

Appellant also argues that he was forced to use a peremptory challenge against Crane and thus was harmed by the trial court's refusal to grant him an additional peremptory challenge so that he could strike the prospective juror Olive Gembler, an allegedly objectionable juror.

Before appellant may be entitled to a new trial for claimed error from the trial court's denial of an additional peremptory challenge appellant must demonstrate harm. In *Sharp v. State*, 707 S.W.2d 611, 622 (Tex.Crim.App.1986) (en banc), the Court of Criminal Appeals set out the steps an aggrieved defendant must take in order to demonstrate the requisite harm:

... To show harm in this situation, the accused must first at some point run out of challenges, have requested and been denied additional challenges, and then show that he was harmed by being forced to take a later, prospective juror

---

6. (Defense Attorney) Mr. Nicholas: "Well, your Honor, I move to have her excluded. I challenge for cause. She seems to have already formed a conclusion as to the person's guilt or innocence as evidenced by her answer."

whom he would have struck, but was unable to because he did not have the sufficient number of strikes to which he was entitled ...

*Id.*

Appellant complains that he was forced to accept the prospective juror Gembler. However, the record reflects that six jurors were qualified before Gembler's name was reached. Thus Gembler was not seated as a juror and appellant was, therefore, not forced to accept this allegedly objectionable juror.

Appellant's points of error two and three are overruled.

Point of error six complains of trial court error in the denial of his requested charge on probable cause. Appellant contends he was entitled to a charge on the issue of probable cause to *approach him.* We have already held that the minimal intrusion required only reasonable suspicion and not probable cause. Therefore, the issue of probable cause never entered the case and was not appropriate for submission to the jury.

Moreover, it is not error for the trial court to refuse to charge the jury on probable cause unless there has been a timely presented objection or special requested charge. *Corbitt v. State,* 445 S.W.2d 184, 187 (Tex.Crim.App.1969).

■ Appellant submitted the following oral request:

Further object to the court failing to charge the jury on the failure to charge on probable cause to approach the defendant at the time. The law clearly states that before a person may be detained or otherwise arrested, the officer must have probable cause upon which to detain the individual or reasonable suspi-

cion of which is not present in this case, and it is a question of fact to be determined by the jury, and would object to the court's failure to charge the jury on the same.

On appeal, the complaint is that the jury should have been instructed not to consider any evidence obtained as a result of the officer's initial approach to appellant if that approach was made without probable cause. It is obvious that the argument now made does not comport with the objection lodged with the trial court. Clearly concern at trial was with the authority to arrest, while on appeal the concern centers about the exclusion of evidence allegedly illegally obtained. *See* TEX.CODE CRIM. PROC. art. 38.23 (Vernon Supp.1988).[7] When the claim of error on appeal does not comport with the trial objection, nothing is preserved for review. *Burdine v. State,* 719 S.W.2d 309, 319 (Tex.Crim.App.1986) (en banc), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). Appellant's sixth point of error is overruled.

■ Point of error number seven alleges that the trial court erred in denying his requested charge on the lesser included offense of evading arrest. Appellant argues that he was entitled to the charge because there is, allegedly, no evidence that he directed any force against Officer Correa. We have already rejected this argument and reaffirm the correctness of that decision.

In *Royster v. State,* 622 S.W.2d 442, 446 (Tex.Crim.App.1981) (on rehearing); it was held that an instruction on a lesser included offense should be given if the lesser included offense is included within the proof necessary to establish the offense charged and if there is some evidence in the record that,

---

7. Art. 38.23 provides:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the

evidence was obtained in violation of the provisions of this article, then and in such event, the jury shall disregard any such evidence so obtained.

(b) It is an exception to the provisions of Subsection (a) of this article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

if the defendant is guilty, he is guilty *only* of the lesser offense.

All of the evidence in the record establishes that appellant forcibly resisted the efforts of Officer Correa to restrain him. There is no evidence that appellant merely fled Officer Correa's efforts to effectuate the arrest. When the evidence fails to show evidence that if appellant was guilty he was guilty only of evading arrest, he has not shown entitlement to a charge on the lesser included offense.

In *Raymond v. State*, 640 S.W.2d 678 (Tex.App.—El Paso 1982, pet. ref'd) upon which appellant relies, the facts demonstrate that the defendant therein merely pulled his arms away from the arresting officer twice before submitting to the arrest. The instant case is clearly distinguishable.

Appellant's seventh point of error is overruled.

In his eighth and final point of error, appellant contends that the court reversibly erred in refusing to charge the jury that he could not be convicted of resisting arrest if the jury found that he resisted at some time after having been placed under arrest.

At trial appellant's objection was:

> Further request the court to charge the jury as follows: You are further instructed that when a person is placed under arrest and sometime subsequent to the arrest the officer uses forces against the defendant, the officer who has placed him under arrest, that the defendant would then not be resisting arrest.

It is doubtful that the foregoing objection and requested instruction has any rational bearing on the contention now raised on appeal. Appellant explains this apparent discrepancy by telling us that the court reporter's transcription came out garbled and that the trial court was in any event on notice of the nature of the requested instruction.

If appellant felt that the record did not accurately reflect what transpired before the trial court, it was his burden to see that the record spoke the truth by proper objection prior to approval of the record, TEX.R.APP.P. 50(d); or appellant could have sought correction after the statement of facts was filed in this court. TEX.R. APP.P. 55. In the absence of some objection timely made, we presume the Statement of Facts to be correct as certified.

Viewing the objection and requested instruction as lodged, we are not convinced that the trial court was placed on notice of any alleged error to which it could respond. The complaint on appeal clearly does not comport with the objection below. Nothing is presented for review.

But even if we accept appellant's argument on appeal as being properly before the trial court, we are not convinced that appellant was entitled to such an instruction. Whether he resisted at some time after having been placed under arrest is immaterial if the evidence establishes as well that resistance occurred also during the officer's efforts to effectuate an arrest. It is for the latter conduct that appellant was charged and convicted and not for any additional criminal conduct that appellant might also have been charged. The trial court did not err in refusing the requested instruction even if it could have understood the nature of the complaint. Appellant's eighth point of error is overruled.

The judgment of the trial court is affirmed.