UNITED STATES of America, Appellee,

v.

Raymond Louis MATLOCK, Appellant.

No. 77–1110.

United States Court of Appeals,
Eighth Circuit.

Submitted July 21, 1977.

Decided July 27, 1977.

Certiorari Denied Oct. 3, 1977.
See 98 S.Ct. 218.

O. H. Storey, III, Little Rock, Ark., for appellant.

W. H. Dillahunty, U. S. Atty. and Gene O'Daniel, Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before HEANEY, ROSS and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Raymond Louis Matlock was convicted by a jury in the Eastern District of Arkansas on four counts of mail fraud, 18 U.S.C. § 1341, namely making false statements in applications for credit cards and failing to pay for purchases made with the cards. On appeal he urges that he was denied a speedy trial; that the search of his briefcase was illegal and the evidence resulting therefrom should have been suppressed; and that testimony concerning other crimes and wrongdoing should not have been permitted.

*Speedy Trial.*

At the time of Matlock's indictment in Arkansas, December 7, 1976, he was serving an eight-year sentence following pleas of guilty to charges in the District of Kansas of interstate transportation of a stolen motor vehicle and interstate transportation of firearms by a felon, and a District of Oklahoma charge of sale and disposition of a stolen motor vehicle. His speedy trial and illegal search claims are based on his arrest on August 28, 1975 in Kansas, which preceded his pleas of guilty to the above charges.

On the advice of his attorney, Matlock cooperated with the FBI after his arrest in the hope that all pending and potential charges against him could be consolidated for sentencing purposes. He disclosed his use of various identities and the fact that he had applied for credit cards under these various names. He gave handwriting exemplars to a postal inspector, who allegedly told him that any potential "postal charges" would probably be dropped in light of the Kansas prosecution. Matlock stated that he understood that if he pleaded guilty to the Kansas and Oklahoma charges, any subsequent federal charges would be included in the sentencing in the District of Kansas pursuant to Fed.R.Crim.P. 20.

Matlock's attorney did make some inquiry about having any charges from the District of Arkansas handled simultaneously in Kansas under Fed.R.Crim.P. 20, and stated in an affidavit that he was led to believe, following discussions with a postal inspector and an Assistant United States Attorney, that "there would be no further federal prosecution of the defendant in the District of Arkansas or any other place, and if there was to be any further prosecution, I was to be notified so as to Rule 20 those cases in the District of Kansas." The postal inspector denied any such agreement.

The United States Attorney for the District of Arkansas did not authorize the mail fraud case against Matlock until June 4, 1976, and stated that verification of handwriting and gathering records delayed the indictment. The handwriting report was received by the United States Attorney's office on November 5, 1976, and an indictment followed on December 7, 1976. Trial commenced January 24, 1977. The indictment charged Matlock with mail fraud during the period from August 1, 1972 through August 28, 1975, the day of his arrest in Kansas, and alleges that he mailed the credit card applications on dates between August 1, 1972 and March 9, 1973.

The sixth amendment right to a speedy trial attaches where there is "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971); *United States v. Costanza,* 549 F.2d 1126 (8th Cir. 1977); *United States v. Jackson,* 504 F.2d 337 (8th Cir. 1974), *cert. denied,* 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975). Appellant argues that his right to a speedy trial on the District of Arkansas charges "crystallized" with his arrest in Kansas on August 28, 1975, because he "considered and understood" that he was

under arrest and in custody for the Arkansas charges as well as the Kansas and Oklahoma offenses. However, he does not allege that he was ever advised that he was under arrest for mail fraud and no District of Arkansas charges were pending. Although appellant gave handwriting exemplars to the postal authorities, investigation and search does not constitute accusation for sixth amendment purposes. *See United States v. Costanza, supra.* While appellant showed that his attorney made inquiries about the Arkansas investigation so that any charges could be consolidated for sentencing in the District of Kansas, the fact remains that he was not in custody pending the filing of the Eastern District of Arkansas mail fraud charge.[1] He was not charged with the offenses until December 7, 1976, and was therefore not accused for sixth amendment purposes until that date.

In *United States v. Marion, supra* 404 U.S. at 324–26, 92 S.Ct. 455, the Supreme Court recognized that pre-accusation delay may violate a defendant's right to due process. Dismissal of the indictment may be required if the defendant shows at trial that pre-indictment delay caused substantial prejudice to his right to a fair trial and that the delay was an intentional device used by the government to gain a tactical advantage over the accused. *Id.* at 324, 92 S.Ct. 455. Appellant was charged with a mail fraud scheme covering the period of August 1, 1972 to August 28, 1975. Fifteen months elapsed between August 28, 1975 and the indictment. At least part of the delay was caused by handwriting verification and gathering of records. There is no indication of intentional delay or of delay undertaken to gain tactical advantage over the defendant.

Investigative delay is fundamentally unlike delay undertaken by the government to gain tactical advantage over the defendant, and due process does not require a dismissal for pre-indictment investigative delay. *United States v. Lovasco,* —— U.S. ——, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).

Moreover, appellant does not allege and did not prove any prejudice to his ability to defend himself at trial. His only allegation of prejudice is that he lost the opportunity to have one sentence imposed in the District of Kansas or to have his sentence run concurrently with another. But we are aware of no constitutional right on the part of a defendant to have all his offenses considered in a single district at time of sentence on a particular conviction.[2] Appellant did have an opportunity at time of sentence in Arkansas to request that his sentence be made to run concurrently with the one he was serving at time of trial.[3]

We find no merit in the claim of unconstitutional delay.

### Search of the Briefcase.

On August 28, 1975, after ten o'clock at night, a police officer observed a strange van in Fredonia, Kansas and ran the license plate number through the National Crime Information Center. He received by radio information that the automobile tag was stolen, that a male subject who should be in the car was wanted by the Oklahoma office of the FBI for interstate transportation of a motor vehicle, that his name was Raymond Matlock, also known as Joe Dean Lantz, Robert Robush and Carl Thomas, among other aliases. Appellant was driving the van, accompanied by his wife and family. The police stopped the van, arrest-

---

1. Appellant's attorney, when asked by the sentencing judge if a plea bargain had been made, did not mention an agreement by Eastern District of Arkansas officials not to indict Matlock on mail fraud charges. There is no indication in the sentencing proceeding or the presentence report that the offenses charged in the Eastern District of Arkansas indictment were considered by the sentencing judge in Kansas or were to be considered.

2. Fed.R.Crim.P. 20 requires the approval of the United States Attorney of the transferring district as well as the consent of the transferee district before a criminal case may be transferred.

3. He still has the right under Fed.R.Crim.P. 35 to ask the District Court for the Eastern District of Arkansas to reduce his sentence after mandate issues from this court.

ed appellant, handcuffed him, and put him in the patrol car. After police discovered a gun in Mrs. Matlock's purse, they ordered all the family out of the van and discovered a revolver in the dog bed either in the course of searching the van or when appellant's daughter carried the bed out of the van. Shortly thereafter, appellant told his wife or daughter to get some papers from a briefcase in the van. Appellant's daughter testified that she entered the van, opened the briefcase, turning it so that the police officers could not see its contents, and hovered over it. Her mother then came and reached into the briefcase and started to take out a billfold. At that point the police grabbed the opened briefcase and discovered a large sum of money and numerous credit cards which later formed the basis of the mail fraud indictment in the District of Arkansas.

Accepting the testimony of appellant and his family concerning the search of the briefcase as true, we hold that the search of appellant's briefcase was justifiable in the circumstances and reasonable under the fourth amendment. The officers clearly had probable cause to stop the van and to arrest appellant after receiving by radio information that the man who should be in the van was wanted on a Dyer Act charge in Oklahoma and that the van's license plate was stolen. *See United States v. Powless*, 546 F.2d 792, 794 (8th Cir.), *cert. denied*, 430 U.S. 910, 97 S.Ct. 1185, 51 L.Ed.2d 588 (1977). Upon his arrest, appellant used one of the aliases given the officers over the radio and thereby corroborated that information. The officers had a right immediately to search the entire vehicle for weapons or fruits of or implements used to commit a crime after making an arrest based on probable cause. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Preston v. United States*, 376 U.S. 364, 368, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *United States v. Collins*, 532 F.2d 79, 85 (8th Cir.), *cert. denied*, 429 U.S. 836, 97 S.Ct. 104, 50 L.Ed.2d 102 (1976). The arrest was at night, two guns had already been discovered, one in Mrs. Matlock's possession, and the briefcase was

admittedly opened and held so that the police could not see its contents, nor could they see clearly what Mrs. Matlock was removing. Under these facts, the officers had probable cause to believe the briefcase contained weapons, and they were justified, for their own protection and to prevent an escape, in taking the open briefcase from Mrs. Matlock and examining its contents. *Cf. United States v. Anderson*, 500 F.2d 1311 (5th Cir. 1974); *United States v. Soriano*, 497 F.2d 147 (5th Cir. 1974) (*en banc*).

In *United States v. Chadwick*, —— U.S. ——, ——, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538 (1977), the Supreme Court observed:

When a custodial arrest is made, there is always some danger that the person arrested may seek to use a weapon, or that evidence may be concealed or destroyed. To safeguard himself and others, and to prevent the loss of evidence, it has been held reasonable for the arresting officer to conduct a prompt, warrantless "search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. [752], at 763 [89 S.Ct. 2034, 23 L.Ed.2d 685]. *See also Terry v. Ohio*, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968).

*Evidence of Other Crimes.*

■ A police officer testified that he arrested appellant in August, 1975 and found sixty-one credit cards in three different names and drivers licenses in two different names in his briefcase and billfold and in Mrs. Matlock's purse. Appellant contends that the prejudice resulting from this testimony outweighed its probative value on the issue of criminal intent, arguing that appellant's intent in 1972–73 when he used the mails to apply for the cards was in issue and not his intent in August, 1975. We disagree.

The testimony was clearly relevant to the issue of criminal intent, a matter on which other crimes evidence is admissible. Fed.R.

Evid. 404(b); *United States v. Aaron,* 553 F.2d 43 (8th Cir. 1977).[4] Appellant was charged with a scheme to defraud which lasted from August 1, 1972 to August 28, 1975, the date of his arrest. While the government had to show specific intent to defraud at the time appellant used the mails to apply for the cards, *United States v. Calvert,* 523 F.2d 895, 908 (8th Cir. 1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976), possession of such a quantity of cards under different names two years later tended to show that the applications for credit cards in 1972–73 were made with intent to defraud and were part of a scheme to defraud with the use of credit cards which continued until August of 1975.

Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice resulting from its admission. Fed.R. Evid. 403; *see United States v. Clemons,* 503 F.2d 486, 489 (8th Cir. 1974). In reviewing the discretionary decision to admit evidence of other criminal activity, we give deference to the judgment of the trial court. *United States v. Maestas,* 554 F.2d 834, at 836 (8th Cir. 1977); *United States v. Jordan* (8th Cir. No. 76–1140, March 21, 1977), slip op. at 3. Although the government did not prove when those cards that were not the basis of the particular counts were applied for, or if they were ever used, their possession by appellant was evidence of conduct closely related to the offense charged and was not vague or speculative. *United States v. Maestas, supra* at 837. While the evidence was undoubtedly prejudicial, we cannot find that the danger of unfair prejudice outweighed its probative value. In this regard it is significant that relatively little time was spent on the matter, *id.* at 837, n. 4; *cf. United States v. Clemons, supra* at 491, and that the court instructed the jury that they must find intent not to pay for the purchases made with the cards at the time appellant applied for the credit cards. The mention of appel-

lant's arrest in Kansas was not prejudicial, as it was mentioned only incidentally and the officer did not disclose what appellant was arrested for.

Finding no error, we affirm.

---

4. It should be noted that part of this testimony was evidence of the offense charged, since it showed that five of the cards which formed the basis of the indictment were found in appellant's possession.