**UNITED STATES of America, Respondent,**

v.

**Gino REDA, Defendant-Petitioner.**

**No. 1160, Docket 77–1062.**

United States Court of Appeals, Second Circuit.

Argued May 17, 1977.

Decided May 17, 1977.

On Rehearing

Submitted Sept. 8, 1977.

Decided Oct. 12, 1977.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City (Robert N. Schwartz, T. Barry Kingham, Asst. U. S. Attys., New York City, of counsel), for respondent.

Gino Reda, pro se.

Before MOORE, SMITH and MULLIGAN, Circuit Judges.

PER CURIAM:

The defendant Gino Reda has appealed from judgments of conviction for the violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1), and 18 U.S.C. § 2 entered in the United States District Court for the South-

ern District of New York following jury trials before the Hon. Charles E. Stewart, *District Judge.* On May 17, 1977 this court affirmed Reda's convictions in an oral opinion. Reda's petition for rehearing was granted on August 22, 1977 to consider the effect on this appeal of the Supreme Court's decision of June 21, 1977 in *United States v. Chadwick,* —— U.S. ——, 97 S.Ct. 2476, 53 L.Ed.2d 538.

Reda was arrested pursuant to a duly issued arrest warrant by agents of the Drug Enforcement Agency (DEA) at La Guardia Airport. At the time of his arrest he had in his possession a small cardboard box which was taped closed and not opened by the agents until several hours later at the United States Attorney's office in Manhattan. The box contained $1,350 in cash and about one-half pound of cocaine. No search warrant to examine the contents of the box had ever been obtained. Judge Stewart denied the defense motion to suppress the cocaine.

In *United States v. Chadwick, supra,* the appellants were taken into custody after they were observed removing a 200-pound footlocker from a train at the Boston Station. They placed it in the trunk of a car and while the trunk was still open they were arrested by DEA agents. An hour-and-a-half later, the locker was opened without a search warrant at the Federal Building in Boston and was found to contain large amounts of marihuana. The motion to suppress the marihuana was granted by the district court and that court's order was affirmed by the Court of Appeals for the First Circuit and the Supreme Court of the United States. In response to the Government's argument that the search should have been upheld because a warrantless search at the time of the arrest would have been permissible, Chief Justice Burger, writing for the Court stated:

> However, warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the "search is

remote in time or place from the arrest," *Preston v. United States,* 376 U.S. (364), at 367, 84 S.Ct. (881) at 883, (11 L.Ed.2d 777) or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

97 S.Ct. at 2485 (footnote omitted).

The Government argues that the facts here are distinguishable from those in *Chadwick* and that under *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) the search should be upheld. We prefer not to take any position on this question, but rather rest our affirmance here on the ground that *Chadwick* is not to be applied retroactively. The Fifth Circuit has previously so held in *United States v. Montgomery,* 558 F.2d 311 (1977). In *United States v. Peltier,* 422 U.S. 531, 535, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), Mr. Justice Rehnquist pointed out that where the retroactivity problem has been raised in exclusionary rule situations, the Court has determined that the new constitutional principle should be applied only prospectively.

> The teaching of the retroactivity cases is that if the law enforcement officers reasonably believed in good faith that evidence they had seized was admissible at trial, the "imperative of judicial integrity" is not offended by the introduction into evidence of that material even if decisions subsequent to the search or seizure have broadened the exclusionary rule to encompass evidence seized in that manner.

Id. at 537, 95 S.Ct. at 2317.

Prior to *Chadwick* there was ample authority for the proposition that if a warrantless search of property could have been made at the time of the arrest, a subse-

quent warrantless search would also be valid. *E. g., United States v. Chadwick, supra,* 97 S.Ct. at 2488 n. 2 and cases cited therein (Blackmun, J. dissenting); *United States v. Montgomery, supra,* 558 F.2d at 312; *United States v. Frankenberry,* 387 F.2d 337, 339 (2d Cir. 1967); *United States v. Caruso,* 358 F.2d 184, 185 (2d Cir. 1966), cert. denied, 385 U.S. 862, 87 S.Ct. 116, 17 L.Ed.2d 88 (1966). See also *United States v. Edwards, supra,* 415 U.S. at 803, 94 S.Ct. at 1237. ("It is also plain that searches and seizures that could be made on the spot at the time of arrest may legally be conducted later when the accused arrives at the place of detention."). Indeed, the earlier affirmance of this panel from the bench evidences the degree to which this principle was accepted prior to *Chadwick.*

In light of this precedent, the agents here were obviously acting in good faith in searching the box after the arrest, and previously evidence so obtained would have been admitted without hesitation. Hence, neither deterrence nor judicial integrity, the two purposes served by the exclusionary rule, is furthered by retroactive application. See *United States v. Peltier, supra,* 422 U.S. at 539, 95 S.Ct. 2313. The obvious burden on the administration of justice that would be created by retroactive application is another factor properly to be taken into consideration in denying *Chadwick* retroactive effect here. *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

On rehearing we affirm for these reasons.