UNITED STATES of America, Appellee,

v.

Ronald SCHLEIS, Appellant.

No. 76–1256.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1978.

Decided Aug. 15, 1978.

Rehearing and Rehearing En Banc Denied Oct. 18, 1978.

---

Jack S. Nordby of Thomson, Wylde & Nordby, argued and filed briefs, St. Paul, Minn., for appellant Schleis.

Joseph T. Walbran, Asst. U. S. Atty. (argued) Minneapolis, Minn., Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., and William J. Zwart, Intern., on briefs for appellee U. S.

Before GIBSON, Chief Judge, and LAY, HEANEY, BRIGHT, ROSS, STEPHENSON and HENLEY, Circuit Judges, en banc.

HEANEY, Circuit Judge.

This case is presently before us for the second time. When the case was first considered, a panel of this Court held that the investigatory stop of the appellant, Ronald Schleis, was justified, and that the subsequent warrantless searches of his person and his briefcase at the station house were lawful. *United States v. Schleis,* 543 F.2d 59, 61–62 (8th Cir. 1976). The Supreme Court vacated the panel opinion and remanded the case "for further consideration in light of *United States v. Chadwick,*" 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). *Schleis v. United States,* 433 U.S. 905, 97 S.Ct. 2968, 53 L.Ed.2d 1089 (1977).

We agreed to hear the case en banc because we felt that it was an appropriate one in which to explicate the effect of the Supreme Court's decision in *Chadwick* on searches and seizures of an arrestee's luggage and other personal property. We leave our earlier panel opinion untouched insofar as it holds that the investigatory stop and the search of Schleis's person were justified. However, after carefully considering the warrantless search of the briefcase in light of *Chadwick,* we are convinced that it cannot be justified as incident to the arrest or by any other exigency. Thus, the search was violative of Schleis's Fourth Amendment rights.

I.

The panel opinion's statement of facts, quoted below, furnishes the background needed for consideration of the effect of *Chadwick* on the search of Schleis's briefcase.

On November 17, 1974, Leon Cheney was leaving Jack's Restaurant in Burnsville, Minnesota, where he had eaten dinner with his family. He observed appellant walking toward the restaurant. Appellant was weaving and stumbled at the restaurant foyer. Cheney watched as appellant attempted to make a telephone call; he saw appellant make several unsuccessful attempts to dial and fumble coins as he attempted to place them in the slot. Cheney, a federal deputy marshal, reentered the foyer and approached appellant, who at that point was leaning against the telephone and clutching his briefcase, his head bobbing and weaving. At close vantage, Cheney observed that appellant's eyes were dilated and staring, but he detected no odor of alcohol on appellant's breath. Appellant's responses to Cheney's questions were inaudible; Cheney concluded that he was under the influence of something other than liquor.

Cheney's reaction to this situation was to request appellant to come outside with him. Before they left the foyer, Cheney attempted to identify himself to appellant as a deputy marshal and read appellant his *Miranda* rights from a card. Cheney asked his wife to call the local police department.

Cheney next placed appellant's hands on the hood of an automobile and patted him down for weapons. In the course of the pat-down, Cheney removed a large bulky wallet from appellant's hip pocket and threw it on the hood of the automobile, where it opened, revealing a small

plastic bag of marijuana and a large amount of currency.

When the police officer arrived at the scene, Cheney showed him what he had discovered. The officer recalled that, approximately a year earlier, another police officer had pointed out appellant to him as a drug dealer. He placed appellant under arrest.

A crowd was gathering and the local police elected to take appellant to the station before completing the search. At the station a search of appellant's clothing revealed a plastic medicine bottle containing a white crystalline substance that appeared to Cheney to be cocaine. (This was confirmed in a subsequent test.) A police officer then forced open the briefcase and found inside over two pounds of cocaine in plastic bags.

*United States v. Schleis, supra* at 60–61 (footnote omitted).

The briefcase was locked by a combination lock. No warrant was sought or obtained authorizing the search of the briefcase, nor was Schleis's permission asked. An evidence locker was available at the station house but it was not used for the briefcase.

## II.

The fact situation in *Chadwick* is similar to that of this case. *United States v. Chadwick, supra.* In *Chadwick*, the defendants were arrested outside a train station just as they were loading a double-locked, 200-pound footlocker into an automobile.[1] After the defendants were searched, they and the unopened footlocker were taken to the federal building where the footlocker was opened and a large quantity of marijuana

was discovered.[2] As in this case, the defendants' consent was not obtained for the search, nor was a search warrant obtained. The government conceded that once the defendants had been arrested, the luggage remained under the exclusive control of the government agents and there was no risk that the defendants could destroy or remove any evidence contained in the footlocker. The agents had no reason to believe that the footlocker contained inherently dangerous items or evidence which would lose its value unless opened at once. There were, as in this case, facilities available in which the footlocker could have been securely stored.

In reaching its decision, the Supreme Court first rejected the government's argument that the Fourth Amendment protects only interests identified with the home. It stated that the Fourth Amendment "protects people from unreasonable government intrusions into their legitimate expectations of privacy." *United States v. Chadwick, supra* 433 U.S. at 7, 97 S.Ct. at 2481. The Court then proceeded to determine that the search was an unreasonable one under the circumstances of the case. It held that

[i]n this case, important Fourth Amendment privacy interests were at stake. By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination. No less than one who locks the doors of his home against intruders, one who safeguards his personal possessions in this manner is due the protection of the Fourth Amendment Warrant Clause. There being no exigency, it was

1. The Supreme Court emphasized that the footlocker's brief contact with an automobile was not sufficient to bring the search within the automobile search exception to the Fourth Amendment warrant clause. *United States v. Chadwick*, 433 U.S. 1, 11–13, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

2. Marijuana was also found in two locked suitcases that were seized along with the footlocker and taken to the federal building where they were searched. The District Court and the Court of Appeals found no adequate justifica-

tion—either as a search incident to arrest or as an inventory search—for the warrantless search of the suitcases and suppressed the evidence obtained in the search. *United States v. Chadwick*, 393 F.Supp. 763, 776–777 (D.Mass. 1975), 532 F.2d 773, 782–784 (1st Cir. 1976). The Supreme Court did not pass on the legality of the arrest since the petition for certiorari only raised the question of the propriety of the footlocker search. *United States v. Chadwick*, 433 U.S. 1, 5 n.1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

unreasonable for the Government to conduct this search without the safeguards a judicial warrant provides.

*Id.* at 11, 97 S.Ct. at 2483.

In so holding, the Court rejected the government's contention that luggage should be analogous to motor vehicles for Fourth Amendment purposes. It reasoned that "a person's expectations of privacy in personal luggage are substantially greater than in an automobile" and that the mobility of the luggage did not "justify dispensing with the added protections of the Warrant Clause." *Id.* at 13, 97 S.Ct. at 2484.

Finally, the Court rejected the government's contention "that the Constitution permits the warrantless search of any property in the possession of a person arrested in public, so long as there is probable cause to believe that the property contains contraband or evidence of crime." *Id.* at 14, 97 S.Ct. at 2485. The Court recognized that under the facts of the case, it was reasonably predictable that a search warrant would have been issued. Nonetheless, the Court concluded that "when no exigency is shown to support the need for an immediate search, the Warrant Clause places the line at the point where the property to be searched comes under the exclusive dominion of police authority." *Id.* at 15, 97 S.Ct. at 2486.

### III.

We turn to the application of *Chadwick* to the facts of this case.

### A.

The government first seeks to distinguish *Chadwick* on the ground that the briefcase is not "luggage" as defined by the context of the Supreme Court's decision. It contends that *Chadwick* should only be applied to fact situations involving searches and seizures of footlockers or other large items that are not easily movable. We cannot agree.

 The contents of a briefcase are entitled to the same protection of the Fourth Amendment as the contents of a footlocker. *United States v. Jackson*, 576 F.2d 749 (8th Cir. 1978).[3] By placing his personal effects inside a combination locked briefcase, Schleis clearly, in the language of *Chadwick*, "manifested an expectation that the contents would remain free from public examination." *United States v. Chadwick, supra*, 433 U.S. at 11, 97 S.Ct. at 2483. Moreover, Schleis retained personal possession of the briefcase, thus, manifesting an even greater expectation of privacy than if he had relinquished possession to a common carrier for shipping as in *Chadwick*.

### B.

The government next seeks to justify the search of Schleis's briefcase under the rationales of *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), which permitted a post-arrest seizure of the clothing of an arrestee, and *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which permitted a search incident to arrest, of the area within an arrestee's immediate control. It further argues that to apply *Chadwick* to briefcases and small packages would, in effect, eliminate both the *Edwards* and the

---

**3.** The following cases have applied *Chadwick* to searches of other than locked footlockers. *United States v. Jackson*, 576 F.2d 749 (8th Cir. 1978) (attache case); *United States v. Marchand*, 564 F.2d 983 (2d Cir. 1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978) (wallet); *United States v. Berry*, 560 F.2d 861 (7th Cir. 1977) (attache case), *vacated on other grounds*, 571 F.2d 2 (1978); *United States v. Vallieres*, 443 F.Supp. 186 (D.Conn. 1977) (suitcase); *United States v. Ester*, 442 F.Supp. 736 (S.D.N.Y.1978) (suitcases); *Sanders v. State*, 262 Ark. 595, 559 S.W.2d 704 (1977), *petition for cert. filed*, 46 U.S.L.W. 3680 (U.S. April 19, 1978) (No. 77–1497) (suitcase); *State v. Randall*, 116 Ariz. 371, 569 P.2d 313 (1977) (suitcases). *But see United States v. Ficklin, Jr.*, 570 F.2d 352 (9th Cir. 1978), *petition for cert. filed*, 46 U.S.L.W. 3741 (U.S. May 17, 1978) (No. 77–1635) (plastic and burlap bags); *United States v. Finnegan*, 568 F.2d 637 (9th Cir. 1977) (suitcases in car trunk). The First Circuit suppressed evidence obtained from the warrantless searches of two locked suitcases seized along with the footlocker in *United States v. Chadwick*, 532 F.2d 773, 782–784 (1st Cir. 1976).

*Chimel* exceptions to the warrant requirement. We do not agree. The Fourth Amendment warrant clause has long been subject "to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). We do not read the Court's decision in *Chadwick* as representing a departure from such a long-standing approach. Indeed, the Court in *Chadwick* recognized and reaffirmed both the *Edwards* and the *Chimel* exceptions to the warrant requirement. After considering these recognized exceptions, however, the Court simply concluded that they did not apply to the fact situation in *Chadwick.* We do no more here.

(1) In upholding the delayed search of the briefcase, the panel opinion relied on *Edwards.* It reasoned that the search would have been proper at the time and place of the arrest and that it was made at a reasonable time and to a reasonable extent. *United States v. Schleis, supra* at 61–62. In *Edwards,* the Supreme Court approved an evidentiary search at the station house, over ten hours after the arrest, of articles of clothing which the defendant was wearing at the time of his arrest. It established a "reasonable time and to a reasonable extent" test for evaluating the applicability of the Fourth Amendment warrant clause to post-arrest seizures of an arrestee's effects. Indeed, the following language in *Edwards* suggests that *any* items that could be searched at the time of the arrest could be searched at *any* time after the arrest.

[O]nce the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant

even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other.

*Id.* 415 U.S. at 807, 94 S.Ct. at 1239. However, a close reading indicates that the Supreme Court was only referring to searches of effects still in the defendant's possession at the place of detention, such as the defendant's clothing.

This reading of *Edwards* is strengthened by *Chadwick* where the Supreme Court distinguished searches of the person from searches of possessions within an arrestee's immediate control, and held that

[u]nlike searches of the person, *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), searches of possessions within an arrestee's immediate control cannot be justified by any reduced expectations of privacy caused by the arrest.

*United States v. Chadwick, supra* 433 U.S. at 16 n.10, 97 S.Ct. at 2486.

*Chadwick* clearly refrained from extending *Edwards* beyond searches of an arrestee's clothing.

■ (2) We recognize that a briefcase is more likely to be within an arrestee's immediate control and, thus, may be subject to the *Chimel* exception and its rationale of protecting officers from possible physical harm and preventing possible destruction or concealment of evidence. *Chimel v. California, supra,* 395 U.S. at 763, 89 S.Ct. 2034. *See, e. g., United States v. Simmons,* 567 F.2d 314, 317–320 (7th Cir. 1977); *United States v. Matlock,* 558 F.2d 1328, 1330–1331 (8th Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 218, 54 L.Ed.2d 152 (1977).[4] *Chadwick* es-

---

4. In *United States v. Simmons,* 567 F.2d 314, 317–320 (7th Cir. 1977), the Court considered *Chadwick* and upheld a search of a purse within the immediate control of a person present during a custodial arrest for armed robbery under *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In *United States v. Matlock,* 558 F.2d 1328, 1330–1331 (8th Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct.

218, 54 L.Ed.2d 152 (1977), this Court considered *Chadwick* and upheld a search of a briefcase in the immediate control of a person present during a custodial arrest as justified under the circumstances. The briefcase had been opened but the arresting officers could not clearly see its contents. Two guns had already been discovered and the arrest occurred at night.

tablishes, however, that the justification for a search under *Chimel* evaporates once the officers seize the luggage or other personal property and reduce it to their exclusive control. *United States v. Jackson, supra.* As the Court held in *Chadwick,*

> warrantless searches of luggage or other property seized at the time of an arrest cannot be justified as incident to that arrest either if the "search is remote in time or place from arrest," * * * or no exigency exists. Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

*United States v. Chadwick, supra,* 433 U.S. at 15, 97 S.Ct. at 2485.

■■ *Chadwick* establishes that the critical factor is the extent to which the property is within the control of the law enforcement officers, rather than the amount of time or space between the arrest and the search. *United States v. Ester,* 442 F.Supp. 736, 739 (S.D.N.Y.1978). Once the officers obtain exclusive control, the requirement for a warrant under *Chadwick* is triggered. Ordinarily, the initial seizure at the time of arrest would be sufficient to place the property within the officers' exclusive control. To otherwise interpret *Chadwick* "would enable police and federal agents to circumvent the *Chadwick* holding by encouraging them to conduct a search of luggage at the time and location of the seizure in conjunction with a lawful arrest." Note, *Criminal Procedure—Search and Seizure—Persons Lawfully Arrested for Alleged Possession of Narcotics have·a Privacy Interest in a Footlocker in Their Possession at the Time of Their Arrest which is Protected by the Warrant Clause of the Fourth Amendment. United States v. Chadwick,* 6 Am.J. Crim.Law 81, 94 (1978) (hereinafter cited as Note, *Criminal Procedure* ).

As in *Chadwick,* the search in this case came after the briefcase had come under the exclusive control of the police and, thus, cannot be justified as a search incident to arrest.

### C.

■ The briefcase came under the "exclusive control" of the police at the time of the arrest when Schleis was handcuffed and taken into custody. The search, however, was conducted at the Burnsville jail well after the arrest and after Schleis had been locked in a jail cell. Since an evidence locker was available in which the briefcase could have been securely placed, there was no reason to believe that any evidence in the briefcase might be destroyed. Moreover, there was no reason to believe that the briefcase contained explosives or other danger instrumentalities.

In short, the case is indistinguishable from *Chadwick.* Thus, the warrantless search of the briefcase was a violation of Schleis's rights under the Fourth Amendment.

### IV.

■ The government alternatively seeks to justify the warrantless search as a valid inventory search under *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). While the panel opinion did not reach this issue, it correctly noted "that the record does little to support this claim." *United States v. Schleis, supra* at 62 n.3.

In *Opperman,* the Supreme Court upheld an inventory search of an automobile, conducted pursuant to standard police procedures, once it had been lawfully impounded. In reaching its decision, the Court stressed the inherent mobility of an automobile, the lesser expectation of privacy in an automobile, and the valid governmental interests served by an inventory search of protecting the owner's property from theft and protecting police against claims over lost prop-

erty. *South Dakota v. Opperman, supra,* 428 U.S. at 367–369, 96 S.Ct. 3092. The Court also noted that there was no suggestion that the search was a pretext for conducting an investigatory search. *Id.* at 376, 96 S.Ct. 3092.

To permit this search under the inventory search rationale would extend that rationale beyond the scope contemplated by the Court in *Opperman.* *See* Note, *Criminal Procedure, supra* at 95. Luggage can be more readily reduced to possession and secured than an automobile. There is a greater expectation of privacy in the contents of luggage than in an automobile. Moreover, the valid governmental interests served by an inventory search could have been satisfied here by inventorying the locked briefcase as a unit. There was no necessity to open the briefcase and inventory its contents. *Id.* The only governmental interest that would be served by permitting this warrantless search would be to relieve the law enforcement officers of the inconvenience of obtaining a warrant before conducting an investigatory search. *Id.* at 89. Mere convenience is not a sufficient governmental interest to override the requirement of the Fourth Amendment warrant clause. *Mincey v. State of Arizona,* —— U.S. ——, ——, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). In sum, the inventory search exception cannot be relied upon to justify the warrantless investigatory search of Schleis's briefcase. *South Dakota v. Opperman, supra,* 428 U.S. at 376, 96 S.Ct. 3092.

## V.

■ The government finally contends that even if the search of Schleis's briefcase was invalid under *Chadwick,* it should be upheld here because the search took place before the Supreme Court had issued its decision in *Chadwick.*[5] After carefully considering this question, however, we are convinced that *Chadwick* presents no question of retroactivity because, as we have previously held, we do not regard *Chadwick* as representing a departure from the Supreme Court's long-standing approach to the Fourth Amendment. *See* Part III, B.[6]

In reaching our decision, we are mindful of the Supreme Court's decision in *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), which expressly addressed the question of retroactivity in the context of the exclusionary rule. In *Peltier,* the Court considered the retroactive application of the Supreme Court's decision in *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), which had held warrantless border searches without probable cause to be unconstitutional and had "broadened" an existing exclusionary rule. *United States v. Peltier, supra,* 422 U.S. at 537, 95 S.Ct. 2313. The Court recognized that the search in *Peltier* was concededly illegal under *Almeida-Sanchez,* but held "that the exclusionary rule should not be mechanically applied * * * because the policies underlying the rule do not justify its retroactive application to pre-Almeida-Sanchez searches." *Id.* at 534–535, 95 S.Ct. at 2316. The Court reached its decision after concluding that neither of the two major purposes of the exclusionary rule—the deterrence of unlawful police conduct and "the imperative of judicial integrity"—would be served by excluding evidence that "law enforcement officers reasonably believed in good faith" to be admissible even if later decisions "broadened the exclusionary rule to encompass evidence seized in that manner." *Id.* at 537, 542, 95 S.Ct. at 2317. The Court held that whether or not the exclusionary rule should be applied in a case raising a question of retroactivity "depends on whether consideration of

---

5. We recognize that the government's argument that *Chadwick* should only be applied prospectively is not without support. *See United States v. Berry,* 571 F.2d 2 (7th Cir. 1978); *United States v. Reda,* 563 F.2d 510 (2d Cir. 1977); *United States v. Montgomery,* 558 F.2d 311 (5th Cir. 1977).

6. Moreover, we note that the Supreme Court did remand this case for our consideration in light of *Chadwick.* If the Supreme Court had not intended *Chadwick* to be applied retroactively, there would have been no reason for remanding the case to this Court.

either judicial integrity or deterrence of Fourth Amendment violations are sufficiently weighty to require that the evidence obtained [by the illegal search] be excluded." *Id.* at 539, 95 S.Ct. at 2318.[7]

Unlike *Peltier,* this case does not present a question of retroactivity and, thus, we need not reach the question of whether or not to apply the exclusionary rule. *Cf. United States v. Martinez,* 526 F.2d 954 (5th Cir. 1976) (holding the Supreme Court's decisions on border searches in *United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975), and *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), to be retroactive). *Chadwick* announces no new constitutional doctrine, nor does it broaden any existing exclusionary rule. All the Court did in *Chadwick* was to hold that warrantless searches of luggage absent an exigency are an invasion of a "legitimate privacy interest" and cannot be justified under any of the long established exceptions to the Fourth Amendment warrant requirement. In so holding, the Court stressed that "in this area we do not write on a clean slate." *United States v. Chadwick, supra,* 433 U.S. at 9, 97 S.Ct. at 2482. While there had been no prior Supreme Court decisions explicitly establishing the existence of a legitimate privacy interest in luggage, the Court cites numerous decisions, including *Ex Parte Jackson,* 96 U.S. 727, 24 L.Ed. 877 (1878), and *United States v. Van Leeuwen,* 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), which "reflect the settled constitutional principle * * * that a fundamental purpose of the Fourth Amendment is to safeguard individuals from unreasonable government invasions of legitimate privacy interests, and not simply those interests found inside the four walls of the home." [8] *Id.,* 433 U.S. at 11, 97 S.Ct. at 2483 (footnote omitted). The Supreme Court need not have applied a well-settled constitutional principle to every possible fact situation before its decisions are entitled to retroactive effect. Moreover, in *Peltier,* the challenged border search had been conducted pursuant to statutory authority and similar searches had repeatedly been upheld against constitutional attack. *Id.,* 422 U.S. at 539–541, 95 S.Ct. 2313. Such is not the case here.[9]

Neither the search of Schleis's briefcase nor the search of the footlocker in *Chadwick* can be justified under existing statute, regulation or prevailing constitutional norm. Accordingly, the decision in *Chadwick* presents no question of retroactivity.

Reversed.

GIBSON, Chief Judge, concurring in the result.

I agree with the majority that Schleis is entitled to reversal of his conviction. As in *Chadwick,* locked personal luggage belonging to the defendant was opened and

---

7. While the meaning of the Court's language is not entirely clear, we do not read *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), as reflecting a new approach that an exclusionary rule would only be applied in cases of bad faith violations of the Fourth Amendment. *See United States v. Ford,* 180 U.S.App.D.C. 1, 26 n.68, 553 F.2d 146, 171 n.68 (1977). We cannot believe that the Court means that the application of the exclusionary rule is to turn on the subjective state of mind of the officer conducting the challenged search.

8. The position has recently been reaffirmed by the Court in *Mincey v. State of Arizona,* —— U.S. ——, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978):

 [T]he Fourth Amendment reflects the view of those who wrote the Bill of Rights that the privacy of a person's home and property may not be totally sacrificed in the name of maxi-

mum simplicity in enforcement of the criminal law. *See United States v. Chadwick,* 433 U.S. 1, 6–11, 97 S.Ct. 2476, 2481–2483, 53 L.Ed.2d 538. For this reason, warrants are generally required to search a person's home or his person unless "the exigencies of the situation" make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment.

 *Id.* at ——, 98 S.Ct. at 2414.

9. The government contends that the search of the briefcase was justified as an inventory search pursuant to the established policy of the Burnsville Police Department. We have rejected this contention. *See* Part IV. As we pointed out, any valid governmental interests could have been served by inventorying the locked briefcase as a unit.

searched by law officers after being removed by them from the arrest scene and being placed under their exclusive control. I do not find it necessary to attempt to specify when that exclusive control was first established. I am reluctant to accept the majority's dictum that, "Ordinarily, the initial seizure at the time of arrest would be sufficient to place the property within the officer's exclusive control." The adoption of that view would practically eliminate the search incident to arrest exception to the warrant requirement. We should adopt a major change in the already confused maze of Fourth Amendment cases only if convinced of its correctness when a case involving the question has arisen and been argued. To issue an advisory ruling today is premature and likely to further darken waters that are already murky.

I also agree that in light of *Chadwick*, the panel opinion's reliance on *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), was misplaced. However, the crucial element in *Edwards* was not the defendant's possession of the clothing at the place of detention. The majority have suggested no reason why a seizure at the jailhouse differs from a seizure at the arrest scene for purposes of a subsequent search of property that has been reduced to the exclusive control of law enforcement officers. The significant distinction between *Edwards* and *Chadwick* is the enhanced expectation of privacy exhibited by a person who places possessions inside locked personal luggage.

I do not seriously question the majority's conclusion that *Chadwick* should not be limited to prospective application. However, that issue is not properly presented by this appeal. The Supreme Court remanded the present case for our consideration in light of *Chadwick*, thus *Chadwick* applies to this case whether or not it applies to any other.